UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

**ROCHELLE TARLOWE**, and **SETH JONAS**,
collectively and individually, and on behalf of **ZACHARY**
**JONAS**, a minor,

Plaintiffs,

-against-

**NEW YORK CITY BOARD OF EDUCATION,**
d.b.a. **NEW YORK CITY DEPARTMENT OF**
**EDUCATION,** and **JOEL KLEIN,**
in his official capacity as Chancellor of the New
York City School Districts

Defendants.

-------------------------------------------------------------------x

**PLAINTIFFS'**
**STATEMENT**
**OF FACTS**

ECF CASE
Civ. No. 07 Civ. 7936

Assigned Judge: GEL

Pursuant to Rule 56.1(a) of the Local Civil Rules of this Court, and in support of
its motion for summary judgment, plaintiffs submit this Statement of Material Facts as to
which it submits that there are no genuine issues to be tried.

1.    Plaintiffs requested an Impartial Hearing on or about August 15, 2006,

challenging the educational program recommended by the Committee on

Special Education (hereinafter "CSE") of the Department of Education, and

seeking tuition reimbursement for the 2006 – 2007 academic year for their

unilateral placement of the student at the Forum School, a school approved by

the States of New York and New Jersey for the provision of special education

services.  See Exhibit A.[1]

---

[1] Exhibits "A – N", "1 – 3", and "I" refer to those Exhibits entered into evidence at the underlying Impartial
Hearing, conducted on October 10, 2006 and November 10, 2006. No documents were entered into
evidence on December 12, 2006. A certified copy of the administrative record, including all exhibits
entered into evidence and transcripts from the three dates of hearing are to be forwarded directly to the
Court from the State Education Department.

2.    On May 24, 2006, the CSE developed an Individualized Education Program ("IEP") for the student, classified him with Autism, and recommended that he attend a Special Class in a Specialized School with related services (6:1:1). See Exhibit B.

3.    No General Education Teacher participated in the development of the IEP. See Exhibit B at 2; See Transcript at 21.

4.    The CSE team included two educators from the Child Development Center who had worked with the student for at least one year. See Exhibit B at 2.

5.    These two educators, the only members of the CSE team who had met Zachary, informed the CSE that they disagreed with the programmatic recommendation being made by the CSE team as his behaviors did not fit with those of a typical autistic child. See Tr. at 57.

6.    Despite lacking the participation of a Speech and Language therapist, the CSE team made the unilateral determination to reduce the student's recommendation for speech and language therapy from a total of 4 hours per week, to one and one half hours per week, in direct opposition to the recommendations of the Speech and Language therapist's report. See Exhibit I; Exhibit B at 18.

7.    On April 18, 2006, the Child Development Center, the student's then-current placement recommended by the CSE, notified the CSE that the student's behaviors were "physically unsafe to himself and to his peers" and requested that he be provided with a management paraprofessional to prevent these behaviors. See Hearing Examinder's Exhibit I.

2

8.    On the May 24, 2006 IEP, the CSE failed to indicate these behavioral needs and similarly failed to indicate whether the student requires behavioral support or modification.  See Exhibit B at 4.

9.    This omission was so glaring that the Hearing Examiner stated "It's clear from page six (of the IEP) that this child's social/emotional performance analysis and needs were not appropriately addressed at the CSE meeting."  Tr. at 89 – 90.

10.    The goals and short term objectives developed for the student and incorporated in the IEP fail to include benchmark levels of current functioning or target levels of functioning.  See Exhibit B at 8 – 15; See Tr. at 102.

11.    The annual goals and short term objectives developed for the student fail to include any schedule for determining his progress.  See Exhibit B 8 – 15.

12.    The CSE team was fully aware that the goals and objectives they developed for the student were so insufficient that his teachers would have no choice but to evaluate him at the beginning of the academic year.  See Tr. at 109.

13.    On June 9, 2006, the CSE issued a Final Notice of Recommendation ("FNR") recommending that the student attend P. 811M @ P. 149 for the 2006 – 2007 academic year.  See Exhibit C.

14.    The CSE forwarded the FNR to an incorrect address and the parents did not receive it until the July 4th holiday weekend.  See Tr. at 184.

15.    Petitioners made multiple attempts to learn more about the recommended program, but were able to learn only that the recommended site had closed and was relocating to another location.  See Tr. at 186 – 187.

3

Exhibit E; Exhibit F; Exhibit G; Exhibit H; Exhibit I; Exhibit J; <u>See</u> Tr. at 187

– 192.

25.     Plaintiffs bring this federal appeal to challenge the decision of the SRO.

Dated:        New York, New York
              December 28, 2007

                    LAW OFFICES OF SKYER, CASTRO, FOLEY & GERSTEN
                    *Attorneys for Plaintiffs*
                    276 5th Avenue, Suite 306
                    New York, NY 10001
                    (212) 532-9736

                    By:  _____
                              JESSE COLE FOLEY

5