## FINDINGS OF FACT AND DECISION

Case Number:          105924

Student's Name:       Zachary Jonas

Date of Birth:        May 7, 2001

District:             3

Hearing Requested By: Parent

Dates of Hearing:     October 10, 2006
                      November 10, 2006
                      December 12, 2006

Hearing Officer:      Michael K. Lloyd, Esq.

Hearing Officer's Findings of Fact and Decision                                    1

Case No. 105924

## NAMES AND TITLES OF PERSONS WHO APPEARED OCTOBER 10, 2006

| | | |
|---|---|---|
| Jesse Foley | Attorney | Parent |
| Rochelle Tarlow | Parent | |
| Christine Goodman | Psychologist, Region 10 | Parent |
| Arthur Ellen | Chairperson Designee, CSE Region 10 | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED NOVEMBER 10, 2006

| | | |
|---|---|---|
| Jesse Foley | Attorney | Parent |
| Rochelle Tarlow | Parent | |
| Meryl Segal | Social Worker Forum School | Parent |
| David Salsberg | Psychologist | Parent |
| Arthur Ellen | Chairperson Designee, CSE Region 10 | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED DECEMBER 12, 2006

| | | |
|---|---|---|
| Jesse Foley | Attorney | Parent |
| Seth Jonas | Parent | |
| Melissa Honig | Teacher Forum School | Parent |
| Arthur Ellen | Chairperson Designee, CSE Region 10 | Department of Education |
| Rosa Nievis | Assistant Principal P 811 | Department of Education |

## HEARING OFFICERS FINDINGS OF FACT AND DECISION

The matter of Zachary J. came before me on October 10, 2006. The date of my designation as Impartial Hearing Officer, pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415(f)(1) was August 16, 2006. The hearing was convened at the request of the parent, which was received on August 16, 2006. The hearings were held on October 10, 2006, November 10, 2006 and December 12, 2006. The parties made no request to submit post-hearing memoranda. The compliance date is extended. Appended to the record are the lists of persons in attendance and of documents submitted into evidence.

Parent has requested this Hearing seeking (1) tuition reimbursement at The Forum School for the 2006-2007 academic year.

## BACKGROUND

This student is currently 5.6 years old and enrolled in a kindergarten program at the Forum School. This institution is one designated by the NYCDOE as an approved emergency interim placement for some of its special education students. It is located and licensed in New Jersey providing special education to students three to sixteen years old. Tr. p.250-252. The student is known to the NYCDOE as previously classified and serviced as a student with a disability (by the CPSE) in a local preschool placement. Tr. p.143-146. On May 24, 2006 a CSE meeting was held which recommended a 6:1:1 12 month program with related services in a District 75 special class special school within its P811M autism designation program.

Parent alleges: (1) improper composition and conduct of the May 2006 CSE (2) failure to consider relevant evaluations and current observations in making a program assignment; (3) failure to timely issue a class assignment; (4) failure to provide timely notice of the class assignment at the parent's current address; (5) making a class assignment contrary to the student's needs such that regression was likely to occur. Parent thereafter unilaterally placed the student in a small class at the Forum School giving written notice of its intent through its attorney on August 15, 2006.

Hearing Officer's Findings of Fact and Decision                                3

Case No. 105924

## THE POSITION OF THE PARTIES

The Parent's position is that this is a student with a Pervasive Developmental Disorder NOS whose cognitive abilities exceed his speech and language development and is capable of overcoming his handicap with proper supports. In the spring of 2006 the student began to aggressively make developmental accomplishments that were noted in various documents provided to the CSE prior to the IEP meeting of May 2006. It is alleged that the CSE personnel failed to take these current reports into account when creating the IEP. Parent contends that the irregularities committed by the CSE amount to a failure to deliver a free and appropriate public education (FAPE) causing the parent to unilaterally place the student in a program to assure that appropriate services would be available to assist the student in overcoming its handicap. The parent claims that procedural failures of the NYCDOE CSE meeting when combined with the subsequent late delivered placement notice rise to the level of denying the student a FAPE.

The NYCDOE argues that notwithstanding any alleged procedural irregularities and/or untimeliness that appropriate services and a proper placement was developed and any failures were diminimus. The NYCDOE denies late notification as evidenced by its C-10 Final Notice of Recommendation. The student is classified as autistic in keeping with NYS classification standards and according to the reports and information available to the CSE and as such the NYCDOE maintains that the proper classification and program was issued. Tr. p. 486-494; 512-520. It is also evidenced by the NYCDOE that said notifications were timely within the context of planning for the student's attendance within a 6:1:1 class commencing September 2006 (Ex. C).

## THE PARENTS' CASE

Parent contends that there was no general education teacher present at the CSE meeting of May 2006. Additionally it is alleged that the NYCDOE special education teacher and the parent advocate both left in the middle of the meeting and did not return. It is further alleged that given the receptivity (or lack thereof) afforded the CDC (local pre-school staff attending at the behest of the parents) representatives that a pre-determination had been made concerning the outcome of the meeting and the program to be assigned the student. While it is acknowledged that both parents had an opportunity to voice their

concerns they contend that the NYCDOE school psychologist meeting coordinator gave little credence to their input or that of the CDC staff. Tr. p.164-172. Parent testifies convincingly about intensive medical investigations, consultations and treatments for the student since 2 ½ years of age. Tr. p.141; 156-157. Parent perceives the student's handicap as more accurately speech and language deficiency based than autistic in the traditional sense. Parent does not dispute the classification (autism) and understands the NYCDOE classification system with the specific classification of PDDNOS as being on the autism spectrum. Parent indicates it is her understanding that a diagnosis of severe verbal developmental dyspraxia is a more accurate description of the student's handicap than either PDDNOS or autism. Tr. p.143-145.

Parent testifies that although dated June 9, 2006 the C-10 Final Notice of Recommendation did not arrive promptly (until sometime in early July 2006) however parent acknowledges receipt of a phone call from the CSE on June 20, 2006 informing her to ignore the C-10 notice (that she had not yet received) as a new facility was being established that would have the proper 6:1:1 placement and services for the student. The parent had previously moved from apartment 7G to 7E (within the same residence) and has repeatedly requested a correction of address of the NYCDOE records however it appears the records were not properly adjusted. Tr. p.182-190. Parent alleges that tardiness in the delivery of the Final Notice of Placement is sufficient to constitute a denial of a FAPE (Ex. A). Parent alleges that it was not until mid-July 2006 that she was able to locate the central office of the P811M program located in the Mickey Mantle School at PS149 to investigate the program. She was informed that there was no specific class available for review as the autism program being established was new and 2006 would be its first year of operation. On August 9, 2006 parent attended a parent orientation at the invitation of the CSE (Tr. p. 187-190) at P811M and was explained the program structure. On August 15, 2006 parent through her attorney allegedly rejected the proposed placement and informed the NYCDOE of her unilateral placement in the Forum School (Ex. A).

## THE NYCDOE'S CASE

The NYCDOE defends the composition of its CSE meeting and asserts that no general education teacher was required as the student's classification of autism negated the consideration of general education as a program/placement for this student. Upon examination the NYCDOE school psychologist coordinator of the CSE meeting testified as to not having any recollection of either the special education teacher or the parent advocate abandoning the parent or leaving the meeting early. Notwithstanding any interpretation as to the conflict within these testimonies it is noted that in attendance at the CSE meeting was the special education teacher from the CDC preschool who contributed various reports and observations sufficient to convey the type of handicap experienced by the student and the services needed to accommodate same (Ex. B-2; F). There is no allegation that this teacher was prevented or inhibited from presenting her observations or conclusions to the committee and the program created by the NYCDOE for the student meets the recommendations contained in the observation (Ex. F-7).

The NYCDOE maintains that the assignment of the student was both appropriate and specific to a class to be created in a newly developed program/placement. Testimony of the Assistant Principal of P811M indicates that there were 2 or 3 age/functional/ grouping appropriate classes (out of 5, 6:1:1 classes) to which the student would have been assigned if the student had enrolled. The design of the program/placement was such that individual student assessments were to be conducted to determine the precise placement in a specific class upon enrollment in the school. Tr. p. 481-494. The NYCDOE proffers that any irregularities in procedure are diminimus and that this student was properly evaluated and properly placed within a program designed to convey an educational benefit while accommodating the handicap of the student. The program was a small class in a special school with a 12month placement with related services that were available to service the student.

## FINDING OF FACTS AND CONCLUSIONS OF LAW

Initially I find that whatever minor irregularities may have occurred concerning this CSE meeting and the resulting IEP they are non-consequential when analyzing if the NYCDOE by its actions denied this student a FAPE. While it is acknowledged that the

issuance of the C-10 Final Notice of Recommendation may have been sent to the wrong address such late receipt by the parent in and of itself does not constitute a denial of a FAPE, particularly in light of the fact that the parent was the former resident of the apartment to which the notice was sent and the correct new address of the parent was across the hall. It appears parent did receive the mail. However, a follow-up phone contact from CSE personnel immediately subsequent to the timely issuance of the C-10 (see Ex. C) adequately informed the parent that information about the assignment to a newly created program/placement would be immediately forthcoming. Subsequently, the parent was afforded an opportunity to inspect and investigate the substance and components of the proposed placement. I find that the NYCDOE in substance complied with both the Regulations of the Commissioner and the intent of the IDEA. In this instance the NYCDOE did provide the student with a FAPE and I find the parent has not met its burden under Prong 1 of the Burlington/ Carter test. The case of <u>Gelormino v. Board of Education of Hyde Park</u>, 04-CV-498 1, 106 LRP 44800 (S.D.N.Y. 2006) is instructive;

"20 U.S.C. § 1415(i)(2)(C), authorizes a district court hearing a challenge to the failure of a local education agency to provide a free appropriate public education to "grant such relief as [it] determines is appropriate." In *Burlington,* 471 U.S. 359, the Supreme Court held that the identically worded predecessor of this section, 20 U.S.C. § 1415(e)(2) (1984), authorized the equitable remedy of tuition reimbursement to parents who had enrolled their disabled child in a private school while they successfully litigated the issue of the inappropriateness of his public placement. Then-Justice Rehnquist explained the reasoning of the decision as follows: The statute directs the court to "grant such relief as [it] determines is appropriate." The ordinary meaning of these words confers broad discretion on the court. The type of relief is not further specified, except that it must be "appropriate." Absent other reference, the only possible interpretation is that the relief is to be "appropriate" in light of the purpose of the Act. As already noted, this is principally to provide handicapped children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs.

The Act contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as non-handicapped children, but the Act also provides for placement in private schools at public expense where this is not possible. See §1412(5); 34 CFR §§ 300.132, 300.227, 300.307(b),300.347 (1984). In a case where a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that "appropriate" relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school. *Burlington,* 471 U.S. at 369-70. Prospective relief alone is not a sufficient remedy because the process of obtaining the relief "is ponderous" and a "final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed." *Id* at 370. Under these circumstances, "it would be an empty victory to have a court tell [parents who placed their child in a private school] several years later that they were right," yet deny them reimbursement for the placement. *Id.* "If that were the case," Justice Rehnquist concluded, "the child's right to a free appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete. Because Congress undoubtedly did not intend this result, we are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement as an available remedy in a proper case." *Id.* The language of § 1415(e)(2), upon which *Burlington* relied, was unchanged by the 1997 revision of the IDEA and continues to provide that the court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The re-enactment of § 1415(e)(2), without change, is significant because it can be presumed that Congress intended to adopt the construction given to it by the Supreme Court and made that construction part of the enactment. *Shapiro v. United States,* 335 U.S. 1, 16 (1948); *Johnson v. Manhattan Ry Co.,* 289 U.S. 479, 500 (1933). Whether 20 U.S.C. § 1412(a)(10)(C)(ii), upon which the School District relies, was intended to eliminate the power of a district court to grant the relief to which Anthony's parents would otherwise be entitled, involves a question to which the IDEA does not provide an unambiguous

Hearing Officer's Findings of Fact and Decision                    8

answer. Indeed, the assertedly "clear implication of the plain language" of §1412(a)(10)(C)(ii), *Tom F.,* 2005 WL 22866, is inconsistent with the clear implication of §1412(a)(10)(C)(i), which in relevant part provides that the obligation of a state to offer a free appropriate education "does not require a local educational agency to pay for the cost of education ... of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." The implication of this subsection is that reimbursement is available where, as here, the agency failed to make a free public education available to the child. *See Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.,* 373 F.Supp 2d 402, 414 (S.D.N.Y.2005)"

        Where the agency has not failed to make a free and appropriate public education available to the child the parent will not be permitted to make a unilateral placement at a private institution at the expense of the public education agency. Most crucial in the determination of this matter is an analysis of the actions and decisions of the parent and the timeline of their occurrences. I find as a matter of fact that the parent made a unilateral decision to enroll the student in a private institution on or about June 13, 2006 four days subsequent to the agency issuing its C-10 Final Notice of Recommendation dated June 9, 2006. This finding is supported by evidence that the parent accepted a contract to enroll the student for September 2006 on or about June 13, 2006 (Ex. L). The parent's initial payment was made to and accepted by the Forum School on June 16, 2006 (Ex. M-1). It is of note that the Forum School employs small classes and the current placement of the student is in a small class with 9 appropriately grouped students 1 teacher and six aides. Tr. p.438-446. While the educational components of this private institution may have some differences from that of the public institution I find that the program/placement is not substantially different from that offered by the NYCDOE. There is no testimony indicating any substantial differences between institutions both offer a small class, 12month programs with related services under close supervision by state certified personnel, both offer specialized services for children on the autism spectrum. Testimony of the Forum School Social Worker indicates the family participated in an extensive interview qualifying process for admission (Tr. p.255-259)

Hearing Officer's Findings of Fact and Decision                                    9

Case No. 105924

---

that began sometime in the spring of 2006. I find as a matter of fact that the notice to the NYCDOE of August 15, 2006 of the parent's decision to enroll the student in the Forum School to have been delivered many days (close to sixty) after the decision was made. I further find that the program offered by the NYCDOE proper and appropriate to convey an educational benefit to the student.

On the facts as presented before me this matter is dismissed.

DATED: January 9, 2007

*Michael K. Lloyd*

MICHAEL K. LLOYD, ESQ.
Impartial Hearing Officer

MKL:ds

**PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Hearing Officer's Findings of Fact and Decision                    10

Case No. 105924

## DOCUMENTATION ENTERED INTO RECORD OCTOBER 10, 2006

| A. | Hearing Request, 8/15/06, 4 pp. | Parent |
|---|---|---|
| B. | IEP, 5/24/06, 18 pp. | Parent |
| C. | Final Notice of Recommendation, 6/9/06, 1 p. | Parent |
| D. | Psychological Summary, 5/5/06, 7 pp. | Parent |
| E. | Physical/Neurological Evaluation, 12/27/05, 9 pp. | Parent |
| F. | Educational Program Report, 12/19/05, 7 pp. | Parent |
| G. | Occupational Therapy Program Report, 12/16/05, 3 pp. | Parent |
| H. | Observation, 12/14/05, 2 pp. | Parent |
| I. | Speech/Language Program Report, 12/15/05, 3 pp. | Parent |
| J. | Counseling Update, 12/9/05, 2 pp. | Parent |
| 1. | IEP, 5/24/06, 18 pp. | Department of Education |
| 2. | Final Notice of Recommendation, 6/26/06, 1 p. | Department of Education |
| 3. | Class Profile, 10/5/06, 1 p. | Department of Education |
| I. | Request for IEP Review, 4/18/06 | |

## DOCUMENTATION ENTERED INTO RECORD NOVEMBER 10, 2006

| K. | Standard Goals and Objectives, Undated, 19 pp. | Parent |
|---|---|---|
| L. | Forum School Acceptance Letter, 6/13/06, 1 p. | Parent |
| M. | Various Parent Checks, Various, 3 pp. | Parent |
| N. | Annual Goals and Objectives, Undated, 6 pp. | Parent |