UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ROCHELLE TARLOWE, and SETH JONAS, collectively and individually, and on behalf of ZACHARY JONAS, a minor,

                                                                                         07 CV 7936 (GEL) (JCF)

                                  Plaintiffs,

                -against-

NEW YORK CITY BOARD OF EDUCATION, d.b.a.
NEW YORK CITY DEPARTMENT OF EDUCATION,
and JOEL KLEIN, in his official capacity as Chancellor of
the New York City School Districts,

                                  Defendants.

------------------------------------------------------------------------ x

**NEW YORK CITY DEPARTMENT OF EDUCATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

       Plaintiffs bring this action on behalf of Zachary Jonas (the "Student"), a child with a disability, to appeal an administrative decision by the New York State Department of Education Office of State Review. In that decision, the State Review Officer ("SRO") upheld the decision of an Impartial Hearing Officer ("IHO") which had denied plaintiffs reimbursement for the cost of the Student's tuition at the Forum School ("Forum"), a private school at which plaintiffs unilaterally placed the Student for the 2006-2007 school year. Defendant New York City Department of Education ("DOE") submits this memorandum of law in opposition to plaintiffs' motion for summary judgment and in support of its cross-motion for summary judgment.

Both the SRO and the IHO who presided over the underlying hearing found that DOE's proposed placement of the Student at P.811M was appropriate and reasonably calculated to confer an educational benefit upon the Student. Thus, plaintiffs had not met their burden under *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985), *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993) and their progeny. The SRO also held that plaintiffs had not established the appropriateness of the Student's program at Forum. Having so held, the SRO affirmed the denial of plaintiffs' claim for tuition reimbursement.

This Court should affirm the SRO's decision and award summary judgment to DOE. Both the SRO and the IHO properly found that DOE offered an appropriate program to the Student. The SRO also correctly found that plaintiffs did not demonstrate that the Forum program was appropriate for the Student. Finally, equitable considerations here weigh against an award of tuition reimbursement. As plaintiff cannot satisfy any of the three elements required to be awarded tuition reimbursement, defendant is entitled to summary judgment, and its cross-motion should be granted.

## STATEMENT OF FACTS

The Court is respectfully referred to defendant's Rule 56.1 Statement of Material Facts, dated February 1, 2008 ("Defendant's 56.1 Statement"), for a statement of those material facts which are not in dispute, and on which this cross-motion is based.

## ARGUMENT

### Standard of Review

Congress enacted the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, to promote the education of students with disabilities. Congress provides federal funding to the states, which have the primary responsibility for developing educational programs for handicapped students, in accordance with federal requirements as to how this must be done. *Schaffer v. Weast*, 546 U.S. 49, 51-52 (2005); *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998). The IDEA provides that a child with a disability must receive a "free appropriate public education" ("FAPE"), 20 U.S.C. § 1400 (d)(1)(A), comprising special education and related services provided at public expense, which meet the standards of the State educational agency, and are provided in conformity with an Individualized Education Program ("IEP"). 20 U.S.C. § 1401(9).

New York defines special education as "specially designed individualized or group instruction or special services or programs… to meet the unique needs of students with disabilities," 8 NYCRR § 200.1(ww), and "related services" as developmental, corrective, and other supportive services as are required to assist a student with a disability…" 8 NYCRR § 200.1(qq). State boards of education are required to prepare an IEP for each student with a disabling condition, setting forth the goals and objectives for the student, and the recommended educational program and related services to attain those goals and objectives. 20 U.S.C. § 1414(d). Both federal and State special education laws require that a child with a disability be educated in the least restrictive environment, that is, with nondisabled peers to the extent feasible and appropriate. 20 U.S.C. § 1412(a)(5); N.Y. Educ. Law § 4402. Special education and related services should be "tailored to meet the unique needs of the child with a disability and be reasonably calculated to enable the child to receive educational benefits." *Walczak*, 142 F.3d at

122; *see also Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982). The amount, or level, of educational benefits that must be provided is not specified in the IDEA. *Walczak*, 142 F.3d at 130. The Supreme Court has held that programs need not maximize the potential of a child with a disability to provide the child with FAPE, but must only provide a program that is reasonably calculated to confer educational benefits, or to produce progress and not regression. *Rowley*, 458 U.S. at 197, n.21; *Walczak*, 142 F.3d at 130 (internal citations omitted).

If the recommendations in the IEP do not provide the student with FAPE, a parent may unilaterally select a private school program for the student and seek to obtain tuition reimbursement from the local board of education. 20 U.S.C. § 1400(d)(1)(A). However, parents who unilaterally place their children in private schools do so at their own financial risk. *Burlington*, 471 U.S. at 373-74. A board of education may be required to pay for the educational program selected by the parent only if (1) the educational program recommended by the board of education was inadequate or inappropriate, (2) the program selected by the parent was appropriate, such that the private program meets the student's special education needs, and (3) the equities support the parent's claim; these three factors comprise the "Burlington/Carter" criteria. *Burlington*, 471 U.S. 359; *Carter*, 510 U.S. 7, 12-13; *Walczak*, 142 F.3d at 129.

A parent seeking tuition reimbursement may request an impartial due process hearing before an IHO. 20 U.S.C. § 1415(f)(1)(A); New York Education Law § 4404(1). The IHO decision may be appealed to the SRO, whose decision is final in the administrative review process. 20 U.S.C. § 1415(g)(1); New York Education Law § 4404(2). After the completion of this administrative review process, the aggrieved party may appeal the decision of the SRO in state or federal district court. 20 U.S.C. § 1415(i)(2)(A). In the appeal, both parties may move

for summary judgment, even if there are disputed issues of material fact.  *Viola v. Arlington Central Sch. Dist.*, 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006).

Beyond the administrative record, a reviewing court may also, in its discretion, consider additional evidence submitted by the parties.  *See* 20 U.S.C. § 1415(i)(2)(C)(ii); *Burlington v. Dept. of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984) *aff'd* 471 U.S. 359; *T.P v. Mamaroneck Union Free Sch. Dist.*, 2007 U.S. Dist. LEXIS 35288, at *28 (S.D.N.Y. May 10, 2007).  Federal courts are required to decide IDEA actions on the basis of the preponderance of evidence.  20 U.S.C. §1415(i)(2)(C)(iii);  *M.S. v Yonkers Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000), *cert. denied,* 532 U.S. 942 (2001).   A parent seeking tuition reimbursement for a unilateral private school placement bears the burden of proof, as the burden falls on the party seeking the relief.  *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).[1]

Two issues are relevant to federal review of an IEP:  whether the development of the educational plan for the student conformed to procedural requirements, and whether the educational plan was reasonably calculated to confer educational benefit on the student.  *Walczak*, 142 F.3d at 129 (citing *Rowley*, 458 U.S. at 206-07).  Procedural errors alone will not necessarily lead to a conclusion that a school district did not offer an appropriate program.  *See Werner v. Clarkstown Cent. Sch. Dist.*, 363 F. Supp. 2d 656, 659 (S.D.N.Y. 2005).  Only procedural errors that "either individually or cumulatively result in the loss or educational opportunity or seriously infringe on a parent's participation in the creation or formulation of the IEP constitute a denial of FAPE."  *Id*. (citing *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 766 (6th Cir. 2001)).

---

[1] Effective October 15, 2007, the New York Legislature amended N.Y. Educ. Law § 4404 and placed the burden of persuasion in impartial hearings on the school districts.  However, these changes do not apply to cases brought prior to October 15, 2007.  Further, under the new scheme, parents still have the burden of demonstrating the appropriateness of unilateral placements.

Federal court review of a parent's unilateral placement similarly focuses on whether the private school's program was reasonably calculated to confer educational benefits on the student. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006) (citing *Rowley*, 457 U.S. at 207; *and Muller v. Comm. on Special Educ.*, 145 F. 3d 95, 105 (2d Cir. 1998)). As no one factor is dispositive in evaluating a unilateral placement, courts make the determination based on the totality of the circumstances. *Frank G.*, 459 F.3d at 364-65 (citing *Rowley*, 457 U.S. at 207; *and Knable*, 238 F.3d at 768). Parents making unilateral placements must also conform to certain procedural requirements, and any failure to do so is taken into account when weighing equitable considerations. *See M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000).

The IDEA broadly authorizes courts to grant relief deemed appropriate. 20 U.S.C. § 1415 (e)(2); *see Muller*, 145 F. 3d at 104. While IDEA administrative determinations are subject to judicial review, the Supreme Court and the Second Circuit have emphasized that they "have interpreted the IDEA as strictly limiting judicial review of state administrative proceedings." *See Viola*, 414 F. Supp. 2d at 377-78 (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380-81 (2d Cir. 2003); *Rowley*, 458 U.S. at 204-208; *Walczak*, 42 F.3d at 129). Federal courts "are expected to give 'due weight' to state administrative proceedings," *M.S.*, 231 F.3d at 102. Thus, the federal courts should defer to the expertise of state and local educational agencies and to the final decision of the state authorities. *Muller*, 145 F.3d at 101 (internal citations omitted).

As discussed more fully below, the Court should affirm the SRO's decision here. Both of the state administrative officers were correct in finding that the DOE offered the Student FAPE. Additionally, the SRO correctly held that plaintiffs were not entitled to tuition reimbursement as plaintiffs did not demonstrate that Forum provided the Student with an

appropriate program.  Finally, equitable considerations here weigh against an award of tuition reimbursement.

## POINT I

### THE PROGRAM OFFERED BY THE DOE WAS APPROPRIATE AND WOULD HAVE PROVIDED THE STUDENT WITH A FREE AND APPROPRIATE PUBLIC EDUCATION

A parent seeking reimbursement for a unilateral private placement must demonstrate, in the first instance, that the placement offered by the school district was inappropriate.  Plaintiff here has not, and cannot, meet that burden.  As the SRO and the IHO correctly concluded, the IEP formulated for the Student recommended a program that would have conferred educational benefits and was procedurally sound.  Thus, the DOE's proffered program was appropriate under the IDEA, and this Court should affirm the SRO's decision denying tuition reimbursement.

The DOE is obligated to provide the Student, as a student with a disability, with special education and related services that are tailored to meet his needs.  20 U.S.C. § 1401(3)(A).  *Walczak*, 142 F.3d at 122.  The DOE must prepare an IEP for the Student that sets forth a recommended program.  20 U.S.C. § 1414(d).  This program need not be perfect or ideal, nor does it have to maximize the Student's potential.  *See Rowley*, 458 U.S. at 198-200.  It must only be reasonably calculated to confer some educational benefit upon the Student.  *Id.* at 207.

Here in New York, the responsibility for developing students' IEPs lies with the local Committee on Special Education ("CSE").  20 U.S.C. §§ 1401(8), 1414(b)(2), 1414(d);  8 NYCRR § 200.4(b).  CSE must be comprised of the parents, a special education teacher, a school psychologist, a representative of the school district who is familiar with both special and general

education within the district, and someone who can interpret the evaluations that have been conducted. 8 NYCRR § 200.3(a)(1); *see also* 20 U.S.C. § 1414(d)(1)(B). A general education teacher should also be present if the child is expected to be participating in a general education environment. 8 NYCRR § 200.3(a)(1)(ii); *see also* 20 U.S.C. § 1414(d)(1)(B)(ii).

An IEP must include, among other things, statements of measurable goals. 20 U.S.C. § 1414(d)(1)(A). The CSE must consider, among others, strategies to address behavior when a student's behavior effects his or her ability to learn (or that of his or her fellow students). 20 U.S.C. § 1414(d)(3)(B); 8 NYCRR 200.4(b)(1). Minor procedural errors in the formulation of the IEP, however, will not necessarily constitute a denial of FAPE. *Werner*, 363 F. Supp. 2d at 659.

In the present case, the CSE which met on May 24, 2006, to formulate an IEP for the Student was properly constituted. Plaintiffs attended the meeting, and a special education teacher, parent member, and school psychologist attended. Exh. B at 2. The school psychologist, Dr. Christine Goodman, also served as district representative, and she also was the participant capable of interpreting the evaluative data. *Id*. A social worker and additional special education teacher from the Center for Child Development, the school the Student attended prior to the 2006-2007 school year, were also present. *Id*.; *see also* Transcript of the Underlying Impartial Hearing, dated October 10, 2006, November 10, 2006, and December 12, 2006 ("Tr.") at 149. No general education teacher was in attendance, but none was needed, as no party though a general education curriculum should be considered for the Student.[2] *Id*.; *see also* Tr. at 215.

---

[2] Indeed, plaintiffs seek reimbursement for placing the Student in a special education program at Forum, a special education school. *See* Tr. at 250-251.

According to Dr. Goodman, the CSE team considered all of the available evaluative material and all the participants were heard. Tr. at 63. Plaintiff Rochelle Tarlowe corroborated this at the underlying hearing, testifying that both plaintiffs were comfortable speaking, had the opportunity to speak, and were able to express their views. *Id*. at 214, 218, 226. The CSE team also recognized that the Student's behavior interferes to some degree with his receiving instruction, but due to an oversight, the corresponding box was not checked on the IEP. *Id*. at 81-83, 85; Exh. B at 6. The IEP did expressly address the Student's behavioral needs in that it recommended refocusing and redirection as needed, preferential seating, intensive adult support, counseling to address social skills, discussed the need to maintain the Student's focus. Exh. B at 3, 5, 6, 8, 9, 10.

The IEP also set forth detailed annual goals for the Student. Numerous classroom goals are written into the IEP, with goals addressing the Student's cognitive, physical, social, emotional, and speech and language needs. Exh. B at 8-11. The IEP also sets out goals for what would be achieved outside the classroom with his speech and language needs, his need for self-regulation, and the need to improve his motor skills and social skills. *Id*. at 12-15. It was expected that teachers at the Student's recommended placement would implement their own specific short term goals to reach the annual goals laid out in the IEP. Tr. at 108-111.

To meet the Student's individual needs, the CSE team recommended he be placed in a special class in a specialized school with a twelve-month school year and a ratio of six students to one teacher and one assistant. Defendants' Local Rule 56.1 Statement ("56.1 Statement") at ¶ 3. Plaintiff Rochelle Tarlowe agreed that a six to one to one ratio was appropriate for the Student. Tr. at 228. The CSE also recommended the Student receive the related services of speech and language therapy, three thirty-minute sessions per week,

occupational therapy, three thirty-minute sessions per week, and counseling for two thirty-minute sessions per week.  Rule 56.1 Statement at ¶ 3.

The CSE mailed a Final Notice of Recommendation ("FNR") to plaintiffs on June 9, 2006.  Rule 56.1 Statement at ¶ 4.  The FNR recommended placing the Student at P.811M for the 2006-2007 school year.  *Id*.  Rosa Nievis, the Assistant Principal at P.811M, testified that based on the Student's IEP, there would have been an appropriate class for him at the school.  Tr. at 487-488.  The school would take account of the Student's behavioral needs, and staff would be able to develop measurable objectives to meet the annual goals on the IEP.  Tr. at 496-501, 530.  Ms. Nievis also testified that the Student could be moved from one class to another if that was found to be more appropriate.  *Id*. at 524-525, 540-541.  P.811M also offers all of the Student's recommended related services on-site, and offers a twelve-month program.  Tr. at 490, 546.

On this evidence, the IHO and the SRO, who later reviewed the full record, found that the DOE had offered an appropriate program to the Student.  Rule 56.1 Statement at ¶¶ 19, 22.  Both found that the program had been reasonably calculated to confer educational benefits on the Student.  *Id*.  Accordingly, both the IHO and the SRO denied plaintiffs' claim for tuition reimbursement. Id. at ¶¶ 20, 22.

In their memorandum in support of their motion for summary judgment dated December 28, 2007 ("plaintiffs' memorandum"), plaintiffs maintain that both the SRO and the IHO made the wrong decision.  Plaintiffs' memorandum at 5.  As they argued at both state administrative hearings, plaintiffs contend that the IEP formulated for the Student was flawed, and that the program offered to the Student was inappropriate.  *Id*. at 8-19.  As both the SRO and the IHO found, none of plaintiffs' arguments here are availing.

Plaintiffs first argue that the CSE was not properly constituted in that there was no general education teacher on the CSE team. Plaintiffs' memorandum at 8-9. Both the federal and state regulations provide that a general education teacher is not required in the CSE if the child will not be in a general education program. 20 U.S.C. § 1414(d)(1)(B)(ii); 8 NYCRR § 200.3(a)(1)(ii). Plaintiff Rochelle Tarlowe conceded that plaintiffs were not even considering a general education program for the Student. Tr. at 215. Thus, the absence of a general education teacher did not infringe on plaintiffs' ability to participate in the formulation of the IEP, and, as both the IHO and the SRO recognized, could not render the IEP invalid. Findings of Fact and Decision of the Impartial Hearing Officer, dated January 9, 2007 ("IHO Dec.") at 5; Decision of the State Review Officer, dated May 11, 2007 (the "SRO Dec.") at 9.

Plaintiffs next argue that the IEP was flawed because the CSE did not take into account private evaluations obtained by plaintiffs. Plaintiffs' memorandum at 10-12. Plaintiffs contend that test results obtained by Dr. David Salsberg of Pediatric Assessment Learning & Support ("PALS") more accurately described the Student's abilities than those relied upon by the CSE. *Id.*; *see also* Exh. D at 1-7; Exh. E at 1-9. However, the CSE did consider the PALS evaluation, but it found evaluations conducted by Dr. Cecilia McCarton and Dr. Christine A. Williams (the "McCarton Evaluation") to be more reliable, and thus the more accurate in describing the Student's abilities. Dr. Goodman explained in detail how she found the PALS evaluation was incomplete, inadequate, and misleading. Tr. at 52-56. Dr. Salsberg admits in his evaluation that he gave the Student only portions of various tests, whereas the McCarton evaluation was based on complete tests. Exh. D at 2-3, 6; Exh. E at 3-6, 8-9; Tr. at 53-56. Dr. Goodman concluded that because it was more complete, the McCarton evaluation was more reliable and therefore it was the results of the McCarton evaluation that appear in the IEP. Tr. at

- 11 -

56. Thus, the CSE, in its discretion, considered the PALS evaluation, but it relied upon what it felt was the best and most accurate data to formulate the Student's IEP. *Id*. at 52-56. This was a sound decision on the part of the CSE, and did not result in a denial of educational opportunity for the Student.

Additionally, although the test scores obtained in the two evaluations were different, as the SRO observed, the reports are very similar in their descriptions of the Student's needs. *See* SRO Dec. at 10-11. For example, both reports note the Student's limited language skills (Exh. D at 2; Exh. E at 3), "variable" attention (Exh. D at 2; Exh. E at 2), difficulty with eye contact (Exh. D at 2; Exh. E at 2), reliance on single words or approximations to communicate his needs (Exh. D at 2; Exh. E at 3), need for repetition (Exh. D at 2; Exh. E. at 3), and difficulty with test taking (Exh. D at 2-3; Exh. E at 2, 6). These very needs were all accounted for in the formulation of the Student's IEP. Therefore, the program recommended by the CSE takes into account the same needs plaintiffs contend were ignored.

Plaintiffs also criticize the CSE for not checking one of the boxes on the IEP for behavioral needs. Plaintiffs' memorandum at 13-14. As discussed above, this omission was merely an oversight and the Student's behavioral needs were discussed on the IEP and would have been addressed in the CSE's recommended program. Such an oversight does not rise to the level of a denial of FAPE. Further, plaintiffs rely on statements made by the IHO during the underlying hearing, which are not evidence and not a ruling. Plaintiffs' memorandum at 13. The Court should, however, consider the decision of the IHO, holding the procedural inadequacies alleged by plaintiffs were "non-consequential when analyzing if the NYCDOE by its actions denied this student a FAPE." IHO Dec. at 5; Rule 56.1 Statement at ¶ 19. Plaintiff made this same argument on appeal to the SRO, and the SRO also found that the Student's behavioral

needs were properly accounted for in the IEP, despite the oversight, and would have been properly addressed at P.811M. SRO Dec. at 13.

Plaintiffs also criticize the goals and objectives set forth in the Student's IEP. Plaintiffs' memorandum at 14-15. As discussed above, the annual goals written for the Student were detailed and thorough and short term objectives would have been developed by teachers at P.811M. As the SRO found, the goals were reflective of the Student's skills and needs and were appropriate. SRO Dec. at 12-13. Plaintiffs are also critical of the IEP for not recommending a specific placement. Plainitffs' memorandum at 16. However, the recommendation of P.811M was sent to plaintiffs shortly after the IEP meeting and well in advance of the start of the 2006-2007 school year.[3] Exh. 2 at 1.

Finally, plaintiffs allege that the Student would not have been properly grouped at P.811M. Plaintiffs' memorandum at 17-19. But as noted above, Ms. Nievis testified that there would have been an appropriate class at P.811M for the Student with peers of similar needs. She also described the range of abilities of the students at the school, and the Student's abilities fall within that range. Tr. at 537-539. As the SRO held, P.811M could have provided a suitable classroom, and this was another factor in his concluding that the DOE offered an appropriate program. SRO Dec. at 14.

In sum, none of the arguments proferred by plaintiffs lead to a conclusion that the IEP was inappropriate or that the Student was denied FAPE. Both the IHO and the SRO, hearing these same arguments, reached this very conclusion and found plaintiffs did not establish that the DOE failed to offer a program appropriate to meet the Student's needs. This Court should defer

---

[3] Plaintiffs maintain that the FNR was received late, plaintiffs' memorandum at 16, but this was likely because plaintiffs had moved to another apartment in their building and the FNR was sent to the previous address. Tr. at 183-184. Both the IHO and the SRO found this to be an insignificant point. IHO Dec. at 6; SRO Dec. at 9.

to their findings and also conclude that the DOE offered the Student a program reasonably tailored to confer an educational benefit upon the Student. Thus, the Court should affirm the SRO's decision and deny plaintiffs' claim for tuition reimbursement.

## POINT II

**PLAINTIFFS HAVE NOT ESTABLISHED THAT THE UNILATERAL PLACEMENT THEY CHOSE FOR THE STUDENT IS AN APPROPRIATE PLACEMENT UNDER THE IDEA**

Even if the Court were to find that DOE did not offer an appropriate program to the Student, plaintiffs still must demonstrate that Forum was appropriate to meet the special education needs of the Student to be entitled to tuition reimbursement. *Shaffer*, 546 U.S. at 62; *M.S.*, 231 F.3d at 104. As the SRO found (the IHO did not expressly reach this issue), plaintiffs cannot meet their burden. SRO Dec. at 14-15. Accordingly, DOE's motion should be granted.

For plaintiffs to establish that they are entitled to reimbursement for the Forum tuition, plaintiffs must show that the Forum program was appropriate for the Student. *Shaffer*, 546 U.S. at 62; *M.S.*, 231 F.3d at 104. While plaintiffs do not have to establish that Forum was perfect, they must demonstrate that Forum provided an educational program and the necessary support services that met the student's special education needs. *E.g., Frank G.*, 459 F.3d at 364-65 (2d Cir. 2006) (citing *Rowley*, 458 U.S. at 188-89 *and M.S.*, 231 F.3d at 105). As the SRO found, plaintiffs have not and cannot meet this burden. SRO Dec. at 14-15.

The IEP formulated for the Student recommended three related service – speech and language therapy, occupational therapy, and counseling. Rule 56.1 Statement at ¶ 3. The IEP recommends that every week the Student receive three thirty-minute sessions of speech and language therapy, three thirty-minute sessions of occupational therapy, and two thirty-minute

sessions of counseling. *Id.* However, at Forum, the Student was only receiving speech and language therapy for three twenty-minute sessions per week and only two thirty-minute sessions of occupational therapy per week. *Id.* at ¶¶ 12, 13, 14. The Student received no counseling while at Forum for the 2006-2007 school year. *Id.* at ¶¶ 15, 16.

This reduction and absence of necessary services demonstrates that Forum was not an appropriate program for the Student. Most significantly, it is undisputed that the Student had significant speech and language deficiencies. Tr. at 157-158; Exh. D at 2. The speech and language therapy is a key element of the Student's program to address those needs. Exh. B at 4, 13, 14. It is also undisputed that the Student needed assistance with social skills. Tr. at 143, 202-203; Exh. D at 3. Counseling was intended to address those needs. Exh. B at 6, 15, 18. Occupational therapy was also deemed important on the IEP. *See id.* at 12, 18. Without this full regimen of services, Forum was not tailored to the Student's needs, and thus it was not an appropriate program. *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113-14 (2d. Cir. 2007) (finding unilateral placement was not appropriate because it did not provide necessary special education services to the student).

Further, as the SRO held in his opinion, beyond the absence of necessary services, the Forum program was not sufficiently focused on the Student's speech and language needs. SRO Dec. at 14-15. Forum appears to have been more concerned with the Student's behaviors, despite testimony that behavioral issues stemmed from the Student's speech and language related frustrations. *Id.*; *see also*, *e.g.*, Tr. at 151. Finally, the Forum program was also only for an eleven-month school year, whereas the IEP recommended a full twelve-month program. Rule 56.1 Statement at ¶¶ 3, 11. For these reasons, the SRO was correct to find that the plaintiffs had not demonstrated that Forum provided an appropriate program for the Student. Therefore, even

if the Court finds the DOE did not offer FAPE to the Student, plaintiffs have failed to meet their burden and tuition reimbursement should still be denied.

In defending the Forum program, plaintiffs make no mention of the reduction of recommended related services or the absence of counseling in the Forum program. *See* plaintiffs' memorandum at 19-22. This is curious, especially when considering the SRO specifically addressed this deficiency in his opinion, and that plaintiffs criticize the DOE for allegedly reducing the provision of speech and language therapy in the IEP formulated on May 26, 2006. *Id*. at 12; SRO Dec. at 14. Plaintiffs also make no effort to counter the SRO's conclusion that Forum was not sufficiently addressing the Student's speech and language needs. *See* plaintiffs' memorandum at 19-22; SRO Dec. at 14-15. Instead, plaintiffs merely argue that the Forum program was adapted for the Student, and that the Student adjusted well at Forum. *See* plaintiff's memorandum at 20-22. Even if this is true, this is inadequate to carry plaintffs' burden, as success at a unilateral placement alone is not sufficient to demonstrate the appropriateness of a unilateral placement. *See Gagliardo*, 489 F.3d at 115 (holding that while a child's progress is relevant to the court's review, "such progress does not itself demonstrate that a private placement was appropriate").

Accordingly, should the Court reach this question, it should affirm the SRO's decision and find that plaintiffs have not met their of establishing the appropriateness of the Forum program. For this reason also, the Court should deny plaintiffs' claim for tuition reimbursement and award summary judgment to the DOE.

# POINT III

## EQUITABLE CONSIDERATIONS WEIGH AGAINST AN AWARD OF TUITION REIMBURSEMENT

Finally, in order for plaintiffs to obtain reimbursement for the Forum tuition, they must not only demonstrate that the school district's general education program was inappropriate and the unilateral placement she chose was appropriate for the Student's needs; the equities must resolve in their favor. *See Burlington*, 471 U.S. at 370-71; *Carmel Cent. Sch. Dist. v. V.P.*, 373 F. Supp. 2d 402, 417-18 (S.D.N.Y. 2005). Equitable considerations are relevant to the relief fashioned under the IDEA, and the Courts should consider all relevant factors, including the reasonableness of the parties' position. *See Wolfe v. Taconic Hills Central School Dist.*, 167 F. Supp.2d 530, 533 (N.D.N.Y. 2001).

In this case, even if the Court should find that the placement offered by DOE was inappropriate and the unilateral placement selected by the parent was appropriate, a consideration of the equitable factors here weighs heavily in favor of denying reimbursement. The record indicates that plaintiffs had determined to send the Student to Forum before they had even received the FNR and they did not seriously consider enrolling the Student in P.811M. Plaintiffs first contacted Forum in March, and the Student had an intake interview there in April, all many weeks before the CSE meeting on May 24, 2006. Rule 56.1 Statement at ¶¶ 5, 6. Plaintiffs made no mention of their interest in Forum at the CSE meeting. *See id*. at ¶ 10. Plaintiffs then received an acceptance letter from Forum dated June 13, 2006, which informed the plaintiffs that if they wished to reserve a place at Forum for the Student, they would have to send a non-refundable, ten percent deposit by June 16, 2006. Exh. L at 1. On June 16, 2006, still prior to their receipt of the FNR, plaintiffs sent the non-refundable deposit to Forum. Rule 56.1 Statement at ¶ 7. However, plaintiffs still did not notify the DOE of this decision until they

requested an impartial hearing by letter dated August 15, 2006. *Id*. at ¶ 10. Also, when the plaintiffs responded to the FNR, they did not seek another placement recommendation, but notified the CSE that they would be hearing from plaintiffs' attorney. *Id*. at ¶ 8.

This evidence demonstrates that plaintiffs were never interested in a public school placement and had decided to send the Student to Forum even prior to the CSE meeting, and certainly prior to receiving the CSE's placement recommendation or visiting P.811M. Indeed, the IHO found as a matter of fact that plaintiffs made the decision to send the Student on or about June 13, 2006. IHO Dec. at 8. Thus, plaintiffs were not sincerely cooperating with the CSE. The Court can, in its equitable power, deny tuition reimbursement solely for this reason. *See Bettinger v. N.Y. City Bd. of Educ.*, 2007 U.S. Dist. LEXIS 86116, at * 23-24 (S.D.N.Y. November 20, 2007) (citing *Carmel*, 373 F. Supp. 2d at 418) (holding district courts can deny tuition reimbursement in full where parents do not cooperate with City's efforts to place the child). Accordingly, equitable considerations do not support plaintiffs' claim, and weigh in favor of a denial of tuition reimbursement.

Therefore, all of the Burlington/Carter factors should be decided in the DOE's favor, and its cross-motion for summary judgment should be granted.

**CONCLUSION**

Based on the foregoing, defendant New York City Department of Education respectfully requests that its cross-motion for summary judgment be granted, that plaintiffs' motion for summary judgment be denied in its entirety, and that the Court grant DOE such other and further relief as the Court deems just and proper.

Dated: February 1, 2008
New York, New York

        MICHAEL A. CARDOZO
        Corporation Counsel of the
         City of New York
        Attorney for Defendants
        100 Church Street, Room 2-179
        New York, New York 10007
        212-788-0889

By:       /s/
     Andrew J. Rauchberg (AR 2179)
     Assistant Corporation Counsel

To: Jesse Cole Foley, Esq.
Law Offices of Skyer, Castro, Foley & Gersten
Attorneys for Plaintiffs
276 5th Avenue, Suite 306
New York, New York 10001
212-683-7999
(via ECF)

# TABLE OF CONTENTS

**Page**

Preliminary Statement .............................................................................................................. 1

Statement of Facts .................................................................................................................... 2

Argument .................................................................................................................................. 3

    POINT I
    The Program Offered By The Doe Was Appropriate And Would Have Provided The
    Student With A Free And Appropriate Public Education ...................................................... 7

    POINT II
    Plaintiffs Have Not Established That The Unilateral Placement They Chose For The Student
    Is An Appropriate Placement Under The Idea ..................................................................... 14

    POINT III
    Equitable Considerations Weigh Against An Award Of Tuition Reimbursement ............... 17

Conclusion ............................................................................................................................. 19